UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

EMIL IACONA,

                         Plaintiff,

        -against-

JP MORGAN CHASE BANK, N.A., AKA
J.P. MORGAN CHASE, HEALTH BENEFITS

                    Defendants.

------------------------------------------------------------ X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUL 13 2012 ★

**BROOKLYN OFFICE**

**MEMORANDUM
DECISION AND ORDER**

12 Civ. 2330 (BMC)

**COGAN**, District Judge.

      Plaintiff *pro se* commenced this action in the New York City small claims court, seeking

to recover $4,967.60 for what he alleges was a breach of a contract he had with his employer,

The Bowery Savings Bank (the "Bowery"), to pay him retirement benefits. Plaintiff alleges that

defendant JP Morgan Bank, N.A. ("JPMB"), which he improperly named as "JP Morgan Chase

Bank. N.A. AKA J.P. Morgan Chase, Health Benefits," is the successor to the Bowery and

therefore owes him the benefits. JPMB removed the case to this Court and has moved to dismiss

or, in the alternative, for summary judgment. Its motion for summary judgment is granted for

the reasons set forth below.[1]

----

[1] The Court could probably limit its decision to JPMB's motion to dismiss, as the documents necessary to determine its motion are likely incorporated by reference in plaintiff's allegation of breach of contract. See generally Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011); accord Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). In addition, because plaintiff has challenged the Court's subject matter jurisdiction and the removability of the action, the Court could consider the evidence the parties have submitted in connection with those issues. See State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007). However, since JPMB has moved in the alternative for summary judgment, thus giving plaintiff notice; has served the required notice to *pro se* litigants under Local Civil Rule 56.2; and has made several assertions in affidavits that are based on the cumulative knowledge of the affiant rather than a specific document, there is no reason not to treat this as a summary judgment motion.

## BACKGROUND

The issue in this case is whether JPMB, or anyone, has an obligation to reimburse plaintiff for his Medicare Part B premium payments. He had such a right to reimbursement when he retired from the Bowery in 1982. The record contains two relevant documents he received from the Bowery pertaining to this right. The first was a memorandum on the Bowery's letterhead, from its Personnel-Benefits department, entitled "Retirement Benefits of Emil N. Iacona from The Bowery Savings Bank" and was signed by plaintiff on September 16, 1981 (the "1981 memo"). It summarizes his retirement benefits, e.g., pension, health insurance, and medical coverage. Under a section entitled "Blue Cross – Blue Shield and Medicare," it states:

> During your lifetime, hospital and medical insurance will continue in effect for you. This coverage will be provided under contracts with Blue Cross and Blue Shield until age 65 and under Medicare thereafter.
>
> You must register for Part A and Part B of Medicare at your Social Security office sometime during the three-month period prior to reaching age 65.
>
> The monthly premium for the medical part of Medicare will be deducted from your Social Security check. The Bank will refund this premium to you on a quarterly basis.

The memorandum also stated: "It is our hope that the benefits listed in which the Bank provides [sic] will continue indefinitely. The Bank, of course, reserves the right to modify or terminate the plans at its discretion."

It did not take long after plaintiff's retirement for the Bowery to drop the Medicare reimbursement benefit. By memorandum dated December 23, 1982, and sent to all retirees (the "1982 memo"), it noted that the Bowery had suffered capital losses throughout the year and needed to "restructure our current benefit program." It went on to advise that "The Bowery can no longer reimburse retirees or their beneficiaries the monthly payment of the Medicare Part B premium. Effective January 1, 1983, this program will be discontinued."

2

As this memorandum suggested, the Bowery was already in financial distress in 1982 despite advertising assistance from its spokesman, Joe DiMaggio, and it went through an FDIC-backed sale to private investors within a few years. It was then acquired by an investment firm that specialized in bank assets, H.F. Ahmanson & Co., in 1988. In 1992, Ahmanson merged the Bowery's retiree obligations into its own plans, and the Bowery retirement program was terminated.

Ten years later, Washington Mutual, Inc., acquired Ahmanson, and, as Ahmanson had done before, WAMU[2] moved Ahmanson's retirement obligations onto its own plans and terminated the Ahmanson plans. A year later, in 1999, WAMU notified retirees on its plans, including plaintiff, that if they wanted to continue their medical coverage under the retirement plan (which became known as WAMU's "Flexible Benefits Plan"), they had to choose one of the Medicare supplemental plans that WAMU was offering; however, each retiree would be responsible for his own Medicare premium payment for that plan, whether he continued medical coverage or not. Plaintiff did not elect to participate in WAMU's plan.

Nearly a decade later, in spring 2008, as news of WAMU's ultimately ruinous exposure to subprime loans became public knowledge, plaintiff wrote to WAMU demanding reimbursement of the Medicare premiums that had been deducted from his social security checks pursuant to his agreement with the Bowery.[3] WAMU investigated his request – as suggested above, it required some corporate historical reconstruction over the preceding twenty-five years – and by letters dated May 1, 2008, and July 14, 2008, it denied plaintiff's demand for the

---

[2] Washington Mutual Bank ("WAMU") is used interchangeably herein with its parent holding company, Washington Mutual, Inc. ("WMI"), except where specifically noted. To be precise, the benefit plans were actually provided by WMI to employees at the WAMU level.

[3] It appears that plaintiff's interest was awakened when WAMU sent a survey to its potential plan participants asking them to update their contact information.

reasons noted above, i.e., that the Bowery had eliminated this benefit in 1983, as it was allowed to do under its program; that WAMU's Flexible Benefits Plan did not provide such a benefit; and that, in any event, plaintiff had not opted into WAMU's Flexible Benefits Plan. WAMU's letter also advised plaintiff that if he wanted to contest this result, he had the right to bring an action under the Employee Retirement Income Security Act, 29 U.S.C. § 1002 et seq.

A few months later, on September 25, 2008, WAMU failed spectacularly and was taken over by the Office of Thrift Supervision. Its parent company, WMI, filed under Chapter 11 of the Bankruptcy Code the next day. That triggered JPMB's first action that led to its involvement in this matter: as was widely reported, it bought certain WAMU assets from the Federal Deposit Insurance Corporation, as WAMU's receiver, promptly after the seizure.

Plaintiff wrote to James "Demon" (sic) at JPMB in October 2009, and again on November 30, 2009, demanding reimbursement of the Medicare premiums that had been deducted from his social security checks. JPMB (although not by Mr. Dimon) responded on December 15, 2009, rejecting his demand for two reasons: first, JPMB referred plaintiff back to his rejection by WAMU in July of the preceding year, pointing out that plaintiff had been advised of his right to bring an action under ERISA if he was dissatisfied; and, second, that JPMB had not, as part of its acquisition of some WAMU assets from the FDIC, assumed the obligations of WAMU's Flexible Benefits Plan.

Undaunted, plaintiff commenced his first action (the "2010 action") – not the instant action – against JPMB in the Kings County small claims court for $4,526.77 in March 2010. Because pleadings in that court are by endorsed summons only, the only description of the claim was for "action to recover monies arising out of breach of agreement." JPMB asserts that it moved for an extension to answer to figure out what was going on, but the small claims judge

4

denied it. Judgment was entered against JPMB for $4,546.77 ($20 in costs was added), and JPMB's motion to vacate the judgment was denied.[4] As a responsible judgment debtor, JPMB satisfied the judgment.

The 2010 action only pertained to Medicare premiums deducted from plaintiff's social security checks for the years 2003-2007. Having emerged victorious from his first foray into small claims court, plaintiff commenced the instant action in small claims court in April 2012, seeking to recover on the same claim except for earlier years – 1994 through 2002. The splitting of the claim is not evident from either the perfunctory endorsed summons in the 2010 action or the one that commenced the instant action, but plaintiff has disclosed his claim-splitting strategy in his opposition to the instant summary judgment motion. (JPMB accuses him of splitting his claim to come within the $5000 small claims court jurisdictional limit in each action, and that may be true, or it may be that plaintiff limited his claim in the 2010 action to the time period arguably within the six year statute of limitations, and then decided that since JPMB had not acted decisively enough for the small claims judge in the 2010 action, maybe he could try it again).

Two things had changed when plaintiff commenced the instant action in small claims court. First, JPMB, which had become embroiled in litigation with WAMU over its asset acquisition in September 2008, settled that litigation, and as part of the settlement, it assumed WAMU's role as sponsor of its Flexible Benefits Plan in March 2012. Second, just as plaintiff had determined that small claims court was a good place for him, JPMB came to the opposite realization, and invoked the complete preemption doctrine under ERISA to remove the action to

---

[4] JPMB asserts that it moved to vacate; plaintiff asserts that it appealed unsuccessfully to the Appellate Term. Neither side has submitted any documents supporting either assertion, but the distinction is not relevant to the disposition of defendant's motion.

this Court. It now seeks to dismiss plaintiff's complaint or for summary judgment on a variety of grounds.

## DISCUSSION

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of an issue of material fact; in making this determination, the court must view all facts "in the light most favorable" to the non-moving party. See Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008). The movant may meet its burden by demonstrating that there is insufficient evidence to support the opposing party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986).

Once the moving party has brought out facts demonstrating that the opposing party's claims cannot be sustained, in order to survive the summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted); see also FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) ("[T]he non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." (internal citation and quotation marks omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

Because plaintiff is proceeding *pro se*, his submissions must be construed to "raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and emphasis omitted). However, this indulgence "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).

In opposition to defendant's motion, plaintiff first contends that removal was improper because he is not suing under ERISA; he is suing on a common law breach of contract claim against JPMB, arising from the Bowery's agreement to reimburse him for his Medicare benefits, which he countersigned in 1981. JPMB responds that this does not matter, for whether under ERISA or the common law, the maximum statute of limitations for plaintiff's claim is six years, citing N.Y. C.P.L.R. §213; Miles v. N.Y. State Teamsters Conference Pension and Ret. Fund Emp. Pension Benfit Plan, 698 F.2d 593 (2d Cir. 1983). Since plaintiff already recovered for the years 2003-2007 in the 2010 action, and is now suing for the years 1994-2002, JPMB asserts that the claim is time barred in any event.

Regardless of whether JPMB's conclusion is correct, I cannot pass over the issue of whether plaintiff's common law claim is preempted by ERISA. If it is not, I cannot resolve any other issues because I would lack subject matter jurisdiction, and would have to remand the case to state court. However, the case was properly removed, as plaintiff's rights arise from a defined benefit plan as provided for in ERISA.

The statute defines "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or
> maintained by an employer . . . to the extent that such plan, fund, or program was
> established or is maintained for the purpose of providing for its participants or
> their beneficiaries, through the purchase of insurance or otherwise . . . medical,

7

surgical or hospital care or benefits . . . .

29 U.S.C. § 1002(1). The Supreme Court has noted that the term "plan" in this context means nothing more complicated than "a scheme decided upon in advance." Pegram v. Herdrich, 530 U.S. 211, 223, 120 S. Ct. 2143 (2000). And the Second Circuit has held that a "'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1209 (2d Cir. 2002) (internal quotation marks omitted). Moreover, "[t]he touchstone for determining the existence of an ERISA plan is whether a particular agreement creates an ongoing administrative scheme." Eckardt v. Wiebel Tool Co., 965 F. Supp. 357, 363 (E.D.N.Y. 1997) (internal quotation marks omitted); see Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 565 (2d Cir. 1998) ("[B]oth the Supreme Court and this court have emphasized that ERISA applies only where such an undertaking or obligation requires the creation of an ongoing administrative program.") (internal quotation marks omitted).

The documents issued by the Bowery reflect an ERISA plan. Under the Second Circuit's decisions, which are arguably more demanding than the Supreme Court's formulations, the benefits are specific so a reasonable person can ascertain them. The class of beneficiaries is obviously retirees. The source of financing is either the Bowery's operating account or a trust or reserve created for that purpose. See In re Chemtura Corp., No. 09-11233, 2011 Bankr. LEXIS 1301, at *23 (Bankr. S.D.N.Y. April 8, 2011) ("the source of financing (i.e., the employer's general resources) can be implied"). And the procedure for receiving the benefit is quarterly

reimbursement after deductions from monthly Social Security checks. It is clearly a "scheme decided upon in advance" for the payment of medical insurance premiums for retirees.[5]

I can appreciate plaintiff's view, as a *pro se* litigant, to the contrary. As far as he is concerned, he had a deal with his employer, his employer breached it, and what he is left with is a simple breach of contract action against the successor to his employer. But what plaintiff needs to understand is that the United States Congress, for the protection of all employees and retirees who were offered these kinds of continuing benefits, came between him and his employer, and created a complicated statutory scheme that superseded his agreement and preempted whatever rights he may have had at common law. Plaintiff may not want the additional protection or the replacement of rights that Congress intended, but Congress had the power to impose them, and it did. Plaintiff was covered by an ERISA plan whether he wanted to be or not. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 67, 107 S. Ct. 1542 (1987); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 57, 107 S. Ct. 1549 (1987).

Plaintiff *pro se* is also understandably confused about the meaning of "concurrent jurisdiction." He argues that even if his claim is deemed to fall under ERISA, the state courts have concurrent jurisdiction so there was no basis for JPMB to remove the case to federal court. He is correct that state courts have concurrent jurisdiction, but concurrent jurisdiction means that when a defendant is sued in state court, it has the option of removing the case to federal court:

> The congressional delegation of power to state courts to exercise con-
> current jurisdiction over individual benefit claims means only that the plaintiff has
> the option, in the first instance, to file an ERISA Section 502(a)(1)(B) action in

---

[5] There is a narrowly construed exception to ERISA jurisdiction when an employer assumes "an independent legal duty" towards an employee beyond the benefits provided in the ERISA-covered plan. See Arditi v. Lighthouse International, 676 F.3d 294, 299 (2d Cir. 2012); see generally Aetna Health Inc. v. Davila, 542 U.S. 200, 207, 124 S. Ct. 2488 (2004). That exception is inapplicable here. The employer's commitment upon which plaintiff is relying is not independent of the ERISA-covered plan; it is the plan itself. Although the 1981 memo was an individualized summary of plaintiff's benefits, the 1982 memo makes it clear that the right to reimbursement of Medicare premiums was afforded to all retirees and eliminated from all of their benefits at the same time.

> state court. Notwithstanding the initial court selection of the plaintiff, the
> defendant has the absolute right to remove a benefit claim to federal court.

Paul J. Schneider & Brian M. Pinheiro, ERISA: A Comprehensive Guide §8.03[D] at 8-8 (4th ed. 2011).

With this issue resolved, plaintiff's claim necessarily fails. The Supreme Court has unanimously held that reservations to change or terminate benefits in ERISA plans are binding on plan participants. See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78, 115 S. Ct. 1223 (1995). The 1981 memo expressly reserved the right to change the terms or even to terminate the Bowery's program, and the 1982 memo did precisely that. Plaintiff complains that he did not receive the 1981 memo, but does not deny that he signed it, and there is no law that requires him to have retained a copy for his records to make it effective.

Through opportunistic litigating and some luck, plaintiff was able to recover thousands of dollars in state court to which he was likely not entitled. But that is over. He has no claim for further reimbursement of his Medicare premiums.[6]

---

[6] Defendant's alternative argument that plaintiff's claim is time-barred is a closer question. ERISA claims based on a denial of benefits and commenced in New York have a statute of limitations of six years. See Muto v. CBS Corp., 668 F.3d 53, 57 (2d Cir. 20120); Burke v. PriceWaterhouseCoopers LLP Long Term Disability Plan, 572 F.3d 76, 78-79 & n.2 (2d Cir. 2009). Ordinarily, such claims accrue when the employer or plan administrator repudiates its obligation under the plan, see Miles, 698 F.2d at 598, which in this case was in 1982. However, the Second Circuit has also held that equitable tolling of the statute of limitations is appropriate where a defendant "fails to comply with the regulatory requirement that they provide notice to beneficiaries of the right to bring an action in court challenging a denial of benefits," subject to the defense of estoppel or laches. See Veltri v. Bldg. Serv. 32b-j Pension Fund, 393 F.3d 318, 325-26 (2d Cir. 2004). Here, plaintiff first received such notice in WAMU's letter of July 14, 2008, which is only four years ago. On the other hand, plaintiff did not inquire about his benefits until 2008, despite the fact that they were terminated approximately 26 years prior, and he claims to be entitled to reimbursements beginning in 1994, fourteen years prior. In any event, I need not resolve the issue of whether plaintiff is entitled to equitable tolling here, as the record is clear that plaintiff's right to Medicare reimbursement was validly terminated in 1982.

## CONCLUSION

Defendants' motion for summary judgment is granted.  The case is dismissed.

**SO ORDERED.**

_____

_____
U.S.D.J.

Dated: Brooklyn, New York
        July 13, 2012

11